# Mechling *et al. versus* The Kittanning Bridge Company.

1. Private citizens have no right of action, either in law or equity, for the suppression of a public nuisance, unless they aver and prove some special damage to themselves.

2. For a nuisance that is merely a public wrong, only a public action can be brought, and this must be done by the proper public functionaries.

IN EQUITY.—The bill of Philip Mechling, and others, was presented to the Supreme Court at Pittsburgh, on the 5th of Nov., A. D., 1856, praying for a preliminary injunction to restrain the Kittanning Bridge Company from obstructing Water and Market streets, in the Borough of Kittanning, and also to restrain said company from obstructing an ancient public road or highway, leading from the mouth of Market street in said borough, down the bank of the Allegheny river, and across the same, connecting at each side, what is known as the Indiana and Butler turnpike. In substance, the bill sets forth,—that the town of Kittanning was laid out above fifty years ago, by commissioners appointed by the governor of the State, by virtue of legislative enactment, and with the consent of John and James Armstrong, the then owners of the lands upon which the town was located.    That Water street in said town was laid out 90 feet wide, and Market street 80 feet wide, and that upon return of the plan of said town, to the office of the Secretary of the Commonwealth, by said commissioners, the same was approved by the governor and original proprietors, (the Armstrongs,) and the streets, lanes, and alleys of said town, as marked on said plan, dedicated to the public use.    Upon the faith of this dedication, lots were sold out and the town settled. Also, that said road leading to the town of Butler, across said river, had been laid out, and used by the public as a common highway, for upwards of thirty years.    The bill further shows that a number of persons styling themselves " The Kittanning Bridge Company," had entirely obstructed and stopped said road, and had to a great extent obstructed *Water and Market streets*, by placing thereon large embankments of earth and stones, &c., and by erecting upon said Water street, and road, a large brick building or house, which house stands about 67 feet from the eastern abutment of said bridge, and is entirely upon Water street, thus hindering and entirely obstructing the passage of the people over and along said road and street.    The court, upon partial hearing of the bill, refused the preliminary injunction, reserving their opinion upon the merits of the controversy, until the case came on for final hearing.

On the 15th November, 1856, John W. Rohrer, Esq., district

[Mechling et al. *v.* The Kittanning Bridge Co.]

attorney of Armstrong county, filed his written consent to the proceeding, and asked to become a party thereto on behalf of the Commonwealth.

The respondents, in their answer, admit nearly all the facts alleged, and claim to be duly constituted a corporation, or body politic, by the Act of 20th April, 1838, and its supplements, and a charter issued by the governor, dated December 27, 1853, and that thereby they are authorized to erect a bridge over the Allegheny river at Market street, in the borough of Kittanning, with all the privileges incident to a corporation, and to take, purchase and own, such and all the real estate necessary for carrying out the objects of the corporation, and that it was necessary to use and occupy a portion of Market street, &c.

*Golden* and *Fulton,* for complainants.

Where the rights of the public are invaded, it is the duty of the court to grant an injunction without regard to the nature of the injury, the amount of damage, or the question of remedy. *Commonwealth* v. *Connellsville R. R.,* 12 Harris, 160. Where the damages are estimable only by "conjecture, and not by any accurate standard," they are within the meaning of the words "*irreparable damage,*" and present a proper case for an injunction. 3 Railway Cases, 106, 345 ; 3 Id. 186 ; 1 Sim. & S. 607 ; 3 Atk. 21 ; 6 Johns. Ch. 501 ; 16 Rik. 525 ; 3 Wh. 513 ; *Commonwealth* v. *Rush,* 2 H. 186. When rights purely public are invaded, no question of damages is ever raised. *Attorney-General* v. *Cohoes Company,* 6 Paige, 133 ; *Downing* v. *M‘Fadden,* 18 State Reports, 334. When railway companies, or individuals, exceed their statutory powers, in dealing with other people's property, no question of damage is raised when an injunction is applied for ; but simply one of the invasion of a right," per Lowrie, J., in *Com.* v. *Pittsburgh and Connellsville R. R.,* 1 Rail. Cases, 135. And it is said, in *Bonaparte* v. *Camden and Amboy R. R. Co.,* Bald. 205, "it is no objection to an injunction that the defendant acts under the authority of an act of the legislature of the State, if he exceeds his authority, or abuses his power, or if the law is unconstitutional."

If the assent of the attorney-general be necessary, he has been admitted to become a party to the bill, and the time is not material, as the bill itself may be amended any time before final hearing. 12 H. 159. It is said by Mr. Brightly, in his Treatise upon Equity, page 246, that "a court of equity will interfere in cases of nuisance, not only on the information of the attorney-general, but also upon the application of private parties." And it seems to be the settled law of this State, that courts of equity will interfere to prevent the invasion of public rights, as the obstruction of streets and highways, in every in-

stance, upon the application of any citizen, and without the intervention of the attorney-general or his deputy; and, indeed, the remedial powers of courts of equity, as exercised in modern practice, have been found so convenient and salutary as almost to obviate the ancient remedies of assize of nuisance and action on the case. And the tendency of the law seems to be to encourage equitable procedure by leaving it free to the humblest citizen, untrammelled by forms. It is distinctly ruled by Judge King, in *Com. Moyamensing* v. *Long*, 1 Par. 148, that the assent of the attorney-general is not necessary.

Having spoken of the remedy, we now come to the case in hand, and we rest the case of the complainants upon four propositions, any and all of which are sufficient to entitle us to a final injunction. First: The legislature has not the power to vacate a public street, or any part thereof, in the borough of Kittanning. Second: If such power be conceded, they have not done so in express terms, and it cannot be done by implication. Third: Conceding, for the sake of the argument, the power and its exercise, by express terms, or otherwise, the legislature could only have intended to vacate so much of the public street and road as might be absolutely necessary to the enjoyment of the franchises of the bridge company. Hence, we say, the corporation has erected its toll house at a greater distance from the bridge than was necessary, and, as a consequence, has invaded the public street further than was necessary. Fourth: The bridge company had no right to obstruct the landing or road to and across the river; at least not until it had provided a substitute.

The dedication of the streets entered into and formed part of the contract with each purchaser of a lot in the town of Kittanning, which contract the legislature has no power to impair. Bill of rights, sec. 17; *Commonwealth* v. *Bowman*, 3 B. 206; *Rung* v. *Shoenberger*, 2 W. 23; *Piper* v. *Singer*, 4 S. & R. 354; *Commonwealth* v. *M'Donald*, 16 S. & R. 390; *Commonwealth* v. *Pittsburgh and Connellsville R. R. Co.*, 12 Harris, 161; Bright. Eq. 169; *Northern Liberties* v. *Gas Company*, 2 Jones, 321; *Attorney-General* v. *Erie and N. E. R. R. Co.*, 3 Casey. *Bank of Pennsylvania* v. *Commonwealth*, 7 H. 211; *Pennsylvania R. R.* v. *Canal Company*, 9 H. 22.

Upon the third point, we remark that " a corporation, being a mere creature of the law, possesses only those faculties which are imparted to it by the charter of its creation, either expressly or impliedly, as necessary to its existence." Brightly's Equity, 169; and corporations must stand upon a strict construction of their chartered privileges. 21 State R. 22; 9 B. 391; 2 Mun. & Gr. 134; 7 Id. 253; 1 Railway Cases, 576; 3 Id. 563; 21 Eng. L. & E. R. 620. They will not be allowed to exercise their

[Mechling et al. *v.* The Kittanning Bridge Co.]

discretion capriciously. 1 Railway Cases, 238; 4 My. & A. 116; 6 Ves. 703; 2 Mer. 29; 6 M. & W. 699.

*Phelps*, for respondents.

· "Where the injury is to the public, the complaint should be made in the name of the Commonwealth, and the bill be filed by the attorney-general." *Commonwealth* v. *Rush et al.*, 2 Harris, 195. "And where the subject of complaint is matter of public nuisance, the attorney-general alone can sue." *Crowder* v. *Tinkler*, 19 Vesey, jr. 621. "In the case of a public nuisance, when the bill is filed by a private person asking relief, by way of prevention, the plaintiff cannot maintain a standing in a court of equity, unless he *avers and proves some special injury.*" *The City of Georgetown* v. *The Alexandria Canal Company*, 12 Peters, 98. The court say "the plaintiffs cannot, upon any principle of law, be recognized as parties competent in court to represent the interests of the citizens of Georgetown, as persons in whose behalf they sue; nor is the difficulty obviated by associating with them the citizens of Georgetown." *Rung* v. *Shoenberger*, 2 W. 23; *Commonwealth* v. *M'Donald*, 16 S. & R. 397; Bright. Eq. 402; *Commonwealth* v. *Bunell*, 2 Barr, 34. "The grant of the right to build the bridge, carries with it the right to build the abutments and toll-house." Coke, Litt. 56, a. "The abutment to a bridge, is part of the bridge." 15 Verm. 438. "And the term bridge, includes not only the superstructure, but the abutments also, so finished that travellers may pass safely thereon." *Board of Chosen Freeholders* v. *Strader*, 3 Harrison, 108. "Where the law authorizes the erection of a bridge, it authorizes the taking of land for the abutments where compensation is provided for." *Linton* v. *Sharpsburg Bridge Company*, ante, 414; *Tucker* v. *Tower*, 9 Pick. 109; *Ridge Turnpike* v. *Stoever*, 2 W. & S. 348; Ib. 378. The right of eminent domain to the land occupied by the defendants, was in the Commonwealth; and, by the act of incorporation, the right to use and occupy it with a bridge became vested in the Kittanning Bridge Company, and the old road and street were to that extent vacated. That an act vacating a public road or street is constitutional, is well settled. *Carver* v. *Paul*, 12 Harris, 211; *Philadelphia and Trenton R. R. Co.*, 5 Wharton, 44, 45; *Bellinger* v. *Burial Ground Society*, 10 Barr, 136, 137.

The opinion of the court was delivered by

LOWRIE, J.—Private citizens have no right of action, either in law or equity, for the suppression of a public nuisance, unless on averring and proving some special damage to themselves, and in this case no such damage is thus shown, and this bill cannot be sustained. For a nuisance that is merely a public wrong, only a

public action can be brought, and that must be done by the proper public functionaries.

This principle decides this case, and it is not proper for us to go further, now, and express any opinion upon the rights of the defendants, or of the acts done by them, in a case brought by parties who show no right to call them to account for their doings.

Bill dismissed at the cost of plaintiffs.